O

**FILED**
CLERK, U.S. DISTRICT COURT

Sept. 30, 2018

CENTRAL DISTRICT OF CALIFORNIA
BY: _____JR_____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Case No. 2:16-CV-03644 (VEB)

JOYCE NEUFELD,

               Plaintiff,

vs.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

               Defendant.

DECISION AND ORDER

## I. INTRODUCTION

In March of 2012, Plaintiff Joyce Neufeld applied for Disability Insurance benefits under the Social Security Act. The Commissioner of Social Security denied the application.[1]

---

[1] On January 23, 2017, Nancy Berryhill took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Berryhill as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Plaintiff, by and through her attorney, Andrew Thomas Koenig, Esq. commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 9, 19). On July 26, 2017, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 19).

## II. BACKGROUND

Plaintiff applied for Disability Insurance benefits on March 13, 2012, alleging disability beginning January 29, 2010.[2] (T at 112-20, 130).[3]  The application was denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On October 14, 2014, a hearing was held before ALJ Mary Everstine. (T at 24).  Plaintiff appeared with her attorney and testified. (T at 28-37).  The ALJ also received testimony from Sharon Spaventa, a vocational expert. (T at 37-44).

On November 24, 2014, the ALJ issued a written decision denying the application for benefits.   (T at 8-23).   The ALJ's decision became the

---

[2] Plaintiff thereafter amended her alleged onset date to January 5, 2012. (T at 11).

[3] Citations to ("T") refer to the administrative record at Docket No. 14.

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

Commissioner's final decision on April 4, 2016, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On May 25, 2016, Plaintiff, acting by and through her counsel, filed this action seeking judicial review of the Commissioner's denial of benefits. (Docket No. 1). The Commissioner interposed an Answer on November 16, 2016. (Docket No. 13). The parties filed a Joint Stipulation on February 2, 2017. (Docket No. 17).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision should be reversed and remanded for further proceedings.

### III. DISCUSSION

**A.      Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot,

considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the

4

evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]  may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 5, 2012, the amended alleged onset date, and met the insured status requirements of the Social Security Act through September 30, 2015 (the "date last insured"). (T at 13).

The ALJ found that Plaintiff's major depressive disorder with alleged anxiety and history of alcohol dependence (in reported sustained remission) were "severe" impairments under the Act. (Tr. 13).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 14).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: Plaintiff cannot perform work that requires more than 1-2 step unskilled tasks[4], and/or work that requires more than limited (i.e. only incidental) interaction with the public. (T at 15).

The ALJ found that Plaintiff could not perform her past relevant work as a data entry clerk, front office clerk, or payroll specialist. (T at 19). However, considering Plaintiff's age (52 years old on the alleged onset date), education (at least high school), work experience, and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T at 19).

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between January 5, 2012 (the amended alleged onset date) and November 24, 2014 (the date of the decision) and was therefore not entitled to benefits. (T at 20). As noted above, the ALJ's decision became the

[4] "Unskilled work" is defined in the Regulations as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. 416.968(a).

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D.     Disputed Issues**

As set forth in the Joint Stipulation (Docket No. 17, at p. 3), Plaintiff offers four (4) main arguments in support of her claim that the Commissioner's decision should be reversed.  First, she contends that the ALJ failed to identify and resolve a conflict between the *Dictionary of Occupational Titles* and the vocational expert's testimony.  Second, Plaintiff contends that the ALJ did not adequately assess her residual functional capacity.  Third, she challenges the ALJ's credibility determination.  Fourth, Plaintiff argues that the ALJ did not properly consider written lay witness testimony.  This Court will address each argument in turn.

## IV. ANALYSIS

**A.     Conflicts with DOT**

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in

substantial numbers in the national economy that the claimant can perform. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995).

Here, the ALJ relied on the vocational expert's testimony at step five and concluded that there were jobs that exist in significant numbers that Plaintiff can perform. (T at 20). In particular, the ALJ found that Plaintiff retained the RFC to perform two jobs identified by the vocational expert – laundry worker and grocery bagger. (T at 20).

Plaintiff challenges the ALJ's reliance on the vocational expert opinion, arguing that the ALJ was obliged to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT").[5]

The ALJ has a duty to inquire about "any possible conflict" between the vocational expert's testimony and the DOT. *See* SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). If there is a conflict, the ALJ may accept

---

[5] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n. 8 (9th Cir. 2007)(citing 20 C.F.R. § 416.966(d)(1)).

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

the vocational expert's testimony if there is "persuasive evidence to support the deviation." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)).

Here, the DOT descriptions for the positions identified by the vocational expert indicate that they require a "reasoning development" level of 02, which includes the ability to "carry out detailed, but uninvolved, written or oral instructions." In contrast, positions that have a "reasoning development level" 01 require only the ability to "[a]pply commonsense understanding to carry out simple one-or-two step instructions." As outlined above, the ALJ determined that Plaintiff was limited to jobs that require only 1-2 step unskilled tasks. (T at 15). Thus, it would appear, based on the ALJ's own findings, that positions with a reasoning development level of 01 would be more consistent with Plaintiff's RFC and that positions with a level of 02 would be precluded.

In *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1002-1004 (9th Cir. 2015), the Ninth Circuit held, on very similar facts, that the ALJ erred by failing to resolve this sort of conflict between the RFC determination and the DOT description. The Commissioner attempts to distinguish *Rounds* on several grounds, which this Court finds unavailing for the reasons that follow.

First, the Commissioner points to Plaintiff's educational background (which included a BA degree) and work history (which included a series of semi-skilled jobs). It was appropriate, the Commissioner contends, for the vocational expert and the ALJ to conclude that Plaintiff could perform the reasoning demands of the identified occupations because of this background. However, this argument bypasses a key fact – notwithstanding Plaintiff's educational background and work history, the ALJ found that she was, at this point, limited to 1-2 step unskilled tasks (T at 15). The ALJ asked the vocational expert to incorporate that limitation. (T at 38). This creates a conflict between the DOT descriptions and the vocational expert's testimony (because the positions identified by the vocational expert, laundry worker and grocery bagger, appear to require performance beyond the limitations set forth in the RFC), which the ALJ did not resolve.

Second, the Commissioner asserts that the conflict was adequately explained. During cross-examination, the vocational expert stated that the laundry worker position was "repetitive" and did not involve "many steps." (T at 43). When asked specifically about the limitation to 1 to 2 step work, the vocational expert responded that "Well, you know, every job requires more than one-to-two step tasks," but the vocational expert explained that she considered the laundry worker position "as simple as it's going to get …." (T at 43).

This is certainly an explanation of sorts, but this Court cannot conclude that it was sufficient to resolve the conflict between the DOT and the testimony. If, in fact, "every job" requires more than one to two step tasks, then how is this to be reconciled with the ALJ's request that the vocational expert identify only positions that could be performed by a claimant limited to one to two step tasks? Would not the answer to that question have to be "there are no such positions"? The vocational expert provided no explanation and the ALJ inquired no further. If the laundry worker job is as "simple as it gets," why does the DOT assign it a reasoning level of 02, as opposed to the more basic level of 01? The vocational expert provided no explanation and the ALJ inquired no further. This was insufficient as a matter of law.

Third, the Commissioner argues that the positions identified by the vocational expert required only the ability to perform unskilled work, which was consistent with the ALJ's RFC determination. However, the ALJ did not simply limit Plaintiff to "unskilled work;" the ALJ specifically included a limitation to "1-2 step unskilled tasks." (T at 15). Having narrowed the scope of Plaintiff's abilities to a subset of unskilled tasks, the Commissioner cannot then rely on the fact that the jobs in question were, in generally unskilled. The question is whether the positions, as described in the DOT, conflict with the vocational expert's testimony that they could

be performed by a hypothetical claimant limited to 1-to-2 step tasks. Here, there was such a conflict and, as noted above, that conflict was not adequately addressed.

Lastly, the Commissioner contends that Plaintiff's counsel did not adequately raise this issue at the administrative level. However, while counsel did not expressly reference the reasoning levels per se, he certainly asked a series of questions attempting to elicit from the vocational expert an explanation as to how a claimant limited to 1-to-2 step tasks could perform the laundry worker job. (T at 42-44). In any event, given the Commissioner's well-established duty to inquire about, and resolve, any conflicts with the DOT, this Court would be inclined to review this claim even if it had arguably not been raised at the administrative level.

In sum, this Court finds there was a conflict between the DOT descriptions and the vocational expert's testimony, the ALJ did not adequately address that conflict, and a remand is therefore required. *Rounds*, 807 F.3d at 1003, *Barrios v. Berryhill*, No. CV 16-3984, 2017 U.S. Dist. LEXIS 60628, at *22-23 (C.D. Cal. Apr. 20, 2017); *Brisk v. Berryhill*, No. CV 16-900 FFM, 2017 U.S. Dist. LEXIS 67747, at *8 (C.D. Cal. May 3, 2017).

**B.    RFC**

Plaintiff also challenges several aspects of the ALJ's RFC determination.

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

## 1.    Consideration of Medical Opinion Evidence

First, Plaintiff argues that the RFC does not incorporate mental limitations set forth in medical opinions the ALJ otherwise credited.    In particular, the ALJ afforded "great weight" to the opinion of Dr. Gary Bartell, a consultative psychological examiner. (T at 17).    Dr. Bartell opined that Plaintiff's ability to perform simple and repetitive tasks and detailed and complex tasks would be impacted to "a mild to moderate degree of impairment" due to her depression. (T at 298).    The ALJ accepted this finding and incorporated it in to the RFC determination by limiting Plaintiff to "1-2 step unskilled tasks." (T at 15, 17).

However, Dr. Bartell also determined that Plaintiff could accept instructions from supervisors and interact with co-workers, "but would be limited by her depression to a moderate extent." (T at 298).    He also concluded that Plaintiff's ability to maintain regular attendance and complete a normal workday/workweek would be "mildly impaired" and that her ability to deal with work stress would be "mildly to moderately impaired by her depression." (T at 299).    The RFC determination does not incorporate these findings and the ALJ's decision does not explain their absence.

In addition, the ALJ assigned "great weight" to the assessment of Dr. K. Loomis, the State Agency review consultant. (T at 17).    However, Dr. Loomis

assessed "moderate" limitation with regard to Plaintiff's ability to work in coordination with or proximity to others without being distracted by them and to complete a normal workday and workweek. (T at 65-66). These limitations are not included in the RFC determination and the ALJ does not explain their absence.

The Commissioner contends that the ALJ's RFC determination already incorporated significant limitations on Plaintiff's ability to perform work and that any failure on the ALJ's part to discuss or incorporate additional mental limitation was harmless. In support of this argument, the Commissioner cites case law to the effect that failure to incorporate "mild" mental health limitations may be considered harmless error. *See Hall v. Astrue*, No. EDCV 09-0141, 2010 U.S. Dist. LEXIS 37343, at *17-18 (C.D. Cal. Apr. 15, 2010)(collecting cases).

However, the limitations assessed here, particularly with regard to Plaintiff's ability to work in coordination or proximity to others (i.e. her interpersonal skills), were found to be "moderate," not merely mild. (T at 65-66, 298). Having afforded "great weight" to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them. The ALJ did neither.

This Court acknowledges the possibility that the ALJ believed Plaintiff *was* limited to some degree with regard to accepting instructions, relating to co-workers,

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

and handling work stress, but nevertheless believed these limitations would not preclude her from performing 1-2 step unskilled tasks at a job involving only incidental contact with the public. However, this Court declines to make that assumption, or retroactively read such a finding into the ALJ's decision. A remand for further consideration and explanation is the right result.

### 2. Consideration of "Paragraph B" Findings

Plaintiff also contends that the ALJ did not adequately translate the "paragraph B" findings into the RFC determination. At step two of the sequential evaluation, the ALJ considers the claimant's functional limitations in the areas of activities of daily living, social functioning, concentration/persistence/pace, and episodes of decompensation. These are commonly referred to as the "paragraph B" criteria. Here, the ALJ found moderate restriction as to activities of daily living, moderate difficulties in social functioning, moderate difficulties as to concentration, persistence, or pace, and one episode of decompensation. (T at 14).

The ALJ nevertheless determined that Plaintiff retained the RFC to perform work involving 1-2 step unskilled tasks, with no more than incidental contact with the public. (T at 15). Plaintiff argues that this does not adequately account for the limitations the ALJ assessed when considering the paragraph B criteria.

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

1          Plaintiff cites *Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. App'x 211, 212 (9th

2    Cir. 2009), in support of her argument.  In *Brink*, the ALJ found that the claimant

3    had moderate difficulty maintaining concentration, persistence, or pace, but, as in the

4    instant case, the RFC determination and hypothetical presented to the vocational

5    expert referenced only "simple, repetitive work." *Id*.   In an unpublished, non-

6    precedential opinion, a panel of the Ninth Circuit reversed and determined that the

7    limitation to simple, repetitive work did not adequately address the claimant's

8    limitations with regard to concentration, persistence and pace. *Id.*

9          Although this Court finds the RFC determination flawed for the reason noted

10   above (i.e. because it did not adequately account for assessed limitations related to

11   Plaintiff's interpersonal skills and ability to deal with work stress), this Court finds

12   no error in the ALJ's translation of the paragraph B criteria into the RFC.

13         The ALJ translated Plaintiff's moderate limitations as to the paragraph B

14   criteria into the RFC by limiting her to work involving 1-2 step unskilled tasks, with

15   no more than incidental contact with the public.  (T at 15).  This conclusion, which

16   was generally supported by the medical evidence, was sufficient under applicable

17   case law in the Ninth Circuit.[6] *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174

18   _____

[6] This is not to say that the RFC determination was *correct*.  Indeed, this Court finds the ALJ's
19   analysis incomplete for the reasons stated above.  However, to the extent the ALJ limited Plaintiff
     to 1 to 2 step tasks with limited interaction with public, that finding is supported by substantial

20

                 DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

(9th Cir. 2008) (finding that RFC limiting a claimant to simple, repetitive work "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony."); *see also Watkins v. Comm'r SSA*, No. 6:15-cv-01539, 2016 U.S. Dist. LEXIS 112555, at *14 (D. Or. Aug. 22, 2016)(distinguishing *Brink* on this basis); *Murray v. Colvin*, No. C-13-01182 DMR, 2014 U.S. Dist. LEXIS 50586, 2014 WL 1396408, at *4 (N.D. Cal. Apr. 10, 2014) (finding that *Brink* did not apply because "[h]ere, the medical evidence supports a finding that Plaintiff is capable of performing one-to-two step instructions despite any limitations in concentration, persistence or pace"); *Maidlow v. Astrue*, No. EDCV 10-01970-MAN, 2011 U.S. Dist. LEXIS 128050, 2011 WL 5295059, at *4 (C.D. Cal. Nov. 2, 2011) ("However, in this case, unlike the cases cited by plaintiff, and as detailed below, the medical expert, upon whom the ALJ relied both in determining plaintiff's RFC and crafting her hypothetical to the vocational expert, testified that plaintiff's deficiencies in CPP resulted in specific work restrictions—to wit, a restriction to simple, repetitive work.").

As such, this Court finds no error as to this aspect of the ALJ's decision.

---

evidence and represents a sufficient translation of the paragraph B criteria. The question of what *additional* limitations, if any, Plaintiff may have with regard to the mental demands of basic work activity will need to be addressed on remand, consistent with this Court's findings above.

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

### 3.      Obesity

The ALJ noted that Plaintiff was obese (she is 5' 8" and weighs 215 pounds) and that she claimed to be limited by her obesity. (T at 16).   However, the ALJ found no additional limitations arising from this condition. (T at 16).

This Court finds no error with regard to this aspect of the ALJ's decision.  The ALJ recognized Plaintiff's obesity and considered the condition when making the RFC determination.  As noted by the ALJ, there is no specific evidence of additional functional limitations arising from Plaintiff's obesity (as opposed to her other impairments). Although Plaintiff criticizes the ALJ for allegedly failing to address the obesity question, she does not identify any specific, additional limitations arising from that condition, either considered separately or in conjunction with her other impairments.   As such, this Court finds the ALJ's analysis of Plaintiff's obesity sufficient. *See Burch v. Barnhart*, 400 F.3d 676, 681-83 (9th Cir. 2005); *Nicholson v. Astrue*, No. CIV S-07-364, 2008 U.S. Dist. LEXIS 23875, at *9-10 (E.D. Cal. Mar. 26, 2008).

## C.      Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the

claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

Here, Plaintiff testified that she has been unable to work since January of 2012 due to difficulties with concentration, anxiety, and depression. (T at 28-30). She does not like to leave her home and remains inside 20 to 25 days per month. (T at 34). Fatigue is an issue; she takes frequent naps. (T at 36-37). She spends most days playing games on her computer. (T at 37).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expect to cause the alleged symptoms, but her statements concerning

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (T at 16).

This Court finds that the credibility analysis should be revisited on remand for two reasons. First, the ALJ described Plaintiff's course of treatment (which was essentially limited to her family care physician) as "conservative" and found that Plaintiff "voluntarily decided against treatment with a mental health specialist." (T at 18). However, Plaintiff's actual testimony was that she limited her treatment to her family care doctor because she had difficulty paying for additional treatment and found it hard to leave the house and form relationships with new medical providers. (T at 31-33).

The ALJ's characterization of Plaintiff's "decision" to limit her treatment to her family care physician (with whom she had a long-standing relationship and good rapport) as "voluntary" is troubling. The ALJ's argument is circular. Plaintiff testified that she has significant difficulty leaving the house and interacting with other people. The ALJ found this not credible, in part, because Plaintiff found it difficult to leave her house and discuss her most personal problems with a stranger (*i.e.* a mental health professional). This aspect of the ALJ's credibility determination requires further consideration on remand. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(noting that "it is a questionable practice to chastise

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

Second, the ALJ noted that Plaintiff's condition was "stabilized" with treatment and medication management provided by her family care doctor. (T at 18). The ALJ also noted that Plaintiff engaged in some activities of daily living, including driving a car, shopping, caring for pets, performing household chores, and preparing meals. (T at 18). However, it is not clear that the ALJ accounted for the impact of stress on Plaintiff's functioning.

Dr. Bartell, the consultative examiner, opined that Plaintiff's ability to deal with work stress would be "mildly to moderately impaired by her depression." (T at 299). As discussed above, the ALJ gave great weight to Dr. Bartell's opinion, but did not incorporate or address the doctor's findings regarding work stress. Dr. Arlene Gonzalez, Plaintiff's long-time treating family care doctor, believed that Plaintiff's anxiety and depression would be exacerbated upon a return to work, leading to problems with co-workers and supervisors. (T at 318). Dr. Gonzalez further explained that Plaintiff's current functioning was the result of structuring her life to avoid stress and that she would expect functioning to deteriorate if Plaintiff was "pushed out of this comfort zone." (T at 319).

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

Individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)).  The ALJ did not adequately account for this fact when considering Plaintiff's credibility.

Thus, this Court finds that the credibility analysis needs to be revisited, particularly with respect to the ALJ's consideration of Plaintiff's reasons for limiting her course of treatment and consideration of the impact of stress on her ability to meet the demands of basic work activity.

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

## D. Lay Testimony

"Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

In this case, written evidence was submitted by Rebecca Sandlin, Plaintiff's friend and roommate. (T at 155-62, 200-208). Ms. Sandlin attested to a long-term friendship with Plaintiff and described significant symptoms, including difficulties with self-care, very limited activities, and social isolation. (T at 155-62, 200-208).

The ALJ gave little weight to Ms. Sandlin's statements, on the grounds that the medical opinions were "more objective and less likely to be influenced by sympathy for [Plaintiff] or other emotional factors." (T at 16). The ALJ also found that Ms. Sandlin's statements essentially mirrored Plaintiff's subjective complaints, which the ALJ found not fully credible. (T at 16).

This issue must likewise be revisited on remand. First, a lay witness has valuable insights to offer because of their frequency of contact with the claimant. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

It is thus improper to discount such evidence purely because the witness is (a) lay person and (b) a friend or family member.  In other words, the ALJ's decision to reject Ms. Sandlin's reports because she is Plaintiff's friend ignores the rationale for the admissibility of lay evidence.  Lay evidence is, by definition, someone with a "non-professional" connection to the claimant (i.e. a family member or personal friend).  To recognize its very purpose as such is not a reason to reject it.  If it was, all evidence of this type would be rejected *ipso facto*, which is clearly contrary to the Regulations requiring careful consideration of this valuable information.  *See* 20 CFR § 404.1513 (e)(2); SSR 88-13; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.").

Second, it is true that lay witness evidence that mirrors the claimant's testimony may be given less weight where the claimant's testimony is validly discounted.  *See Valentine* v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  However, as outlined above, in this particular case, the ALJ's assessment of Plaintiff's credibility was flawed and thus likewise cannot provide a basis for sustaining the decision to discount the lay evidence.  Ms. Sandlin's reports will need to be revisited on remand.

**E.     Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, this Court finds that remand for further proceedings is warranted.   It is clear that Plaintiff has significant limitations arising from her mental health impairments.   The exact extent of those limitations, and their impact on the vocational factors, is not clear from the record.   As such, a remand for further proceedings is the proper result. *See Strauss v. Comm'r of Soc. Sec.*, 635 F.3d 1135, 1138 (9th Cir. 2011)("Ultimately, a claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.").

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB

**V. ORDERS**

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this matter for further proceedings consistent with this Decision and Order, and it is further ORDERED that

The Clerk of the Court shall file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case without prejudice to a timely application for attorneys' fees and costs.

DATED this 30th day of September 2018.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – NEUFELD v BERRYHILL 2:16-CV-03644-VEB